Judge Baum, Judge Williams, Judge Easterbrook, there is one issue in this case has been decided by the companion case Lawler v. Peoria School District. Counsel could you raise your voice some so we can hear you? Yes, I'm sorry. No, raise your voice. Don't fiddle with the microphone. Raise your voice. Yes, sir. The microphone records. But this is a big room. Yes. Is this okay? The ESA has got wonderful fans whirring around in this field. How is this? That's fine. Okay, thank you. And if I slip again, please let me know. Good, thank you. There was a claim splitting issue, race judicata defense, and what had happened is Frakes and another plaintiff who filed a rehabilitation act different from Frakes' claim, the union had brought an action in state court for interpretation of a school code. The Lawler opinion has been issued, case 15-29-76, it says that the school district had acquiesced in the claim splitting and therefore I think that resolves the issue for that case. If you need citation, I can do it or it's just... I'm lost. You know, as far as I can see in this case with respect to preclusion, your adversary argued preclusion, which your brief didn't mention, and you then didn't file a reply brief. And the usual upshot of that is that that's all she wrote. My main brief argued in the last portion, your honor, page 39 to the end, argued remand was unnecessary because the findings show that acquiescence and it was adequately done. I don't see how I've waived it if I address it in my main brief. And specifically the very last part, page, as I said, page 39 to the end, and I addressed it there, therefore I rely on you, I remain lost. Whether the district judge addressed the issues, neither here nor there, since a litigant can defend its judgment on any ground that was preserved in the district court. The last page of your brief then says, well, we incorporate what we said there, and you can't incorporate things into a brief. You can't force the judges to go read some other document. I specifically, on page 41, raise the failure to object to claim splitting is acquiescence. I say that in the brief. Now, I don't know what else I can say other than the fact that the judge had ruled it was an alternative ground for affirmance, so I thought I should address the main brief, and I did. The next, I don't see what a reply brief would do when I've already addressed it specifically on the specific grounds, and it was applicable to both plaintiffs. The next issue is, on the summary judgment, a matter of form. I responded to the statement of undisputed facts, and I thought the best way to bring before the judge the dispute in this case, which was over the evaluation of Carolyn Nunn, who was not qualified with our convention. She did not know what it was like to teach these behavioral students, and I had, was to match up what Nunn said in her evaluation with what the expert I retained in special education on treating these very difficult behavioral students, and that was excluded because it didn't comply with the local rule. Well, I've cited the local rule, and it just says we're supposed to say facts that are undisputed, and there has surfaced since about 2010 somewhere the idea that you have to admit on these point-counterpoint things a complete admission or not. Well, the rule doesn't say that, and I don't see how that can be helpful to the court. I used the example of, you've got everybody in a recording video seeing the defendant run the red light, and you get a statement of fact, defendant's testified he did, the light was green when he went through. Well, I don't think it helps much to admit that that's said and leaves you open to an unqualified admission on summary judgment, which I have seen happen. So that's why I've always been very cautious about that, plus rule 56 says you're supposed to cite to the materials in the record. As to the actual merits of the case, it's a very narrow case. My client came to me with this evaluation and said this just does not follow the accepted standards for treating these severely behavioral students, and I went to get an expert, and lo and behold, that's what it turned out. Judge Shadid saw the claim on a motion to dismiss. The question was does the Rehabilitation Act overcome state law, and the specific provision I relied on was 1223B, which was interference with the teacher's providing of education. And that's her protected activity? Teaching, yes. Yeah, so I guess I'm trying to, she admitted that she attempted to implement some of Ms. Nunn's advice, and basically she says, you know, that her claim is she believed what was best for her students. I just have a problem with, I don't think that's sufficient. Well, that isn't, but when you look at the evaluation. But when we look at the evaluation, she has numerous admissions that she needs to improve her performance. For example, on the first page of her rebuttal document, she says I'm the first to admit I need to improve in my job performance, and then says, however, we do really want perfect teachers teaching our kids. I mean, that. Well, but when we get into the specifics, I mean, yes, she did say that, and of course, she wants to keep her job and try to get her remediation back, so she better be cooperative. But you had, on the evaluation, you had a statement, several statements that were critical to the adverse rating that just aren't true. And then I have an issue with intentional discrimination. I don't see any evidence of that. Well, it's a good thing students like each other or there'd be fights every day. That does not recognize what you're dealing with. These kids have disorders, and they have act out in class. And she's not even considering that because they're not acting like a mainstream class. So you look at another one, her caring nature towards the students is a liability. Actually, they need more of it. These behavioral students are one step from an institution. And if it doesn't work here, it doesn't. Then there's, I mean, you can take an isolation, her response, and say, well, yeah, I need to improve on things. That's approaching it constructively. But you have to have someone who knows what in the world is going on in these classes. And as my discussion of these particular students, she has to have a student assistant with her. They have timeouts. You have guards. You have padded rooms where you take them if they can't control themselves. And to have somebody evaluating this who did not recognize that, that throws off the whole evaluation. Yeah, she could have been better on her presentation of something that each teacher went to a continuing education thing. There was a question about whether an evaluation had been scheduled or whether it was her fault. All those things, yes, you can say, well, sure. But that's not enough to take her out. The reason that I brought the case was that the expert reviewed it. And he's not giving the ultimate opinion on what it affects. He thinks it's for the court. Is that this person did not know what it was to teach these students. And that's a jury question. Want to reserve the rest of your time. Thank you. All right. Mr. Eisenhamer? May it please the court. Plaintiff's Section 504 claim presents two questions that need to be answered. First, did the plaintiff aid her students in the exercise or enjoyment of their rights under Section 504? And then second, did the defendants intend to and didn't? And in fact, did they interfere with plaintiff when she was aiding her students? Based on the material facts that are not in dispute, the answer to both questions are no. With respect to the first question, there's no evidence in the record that the district, the defendant, was discriminating against any disabled students, neither as part of a class or an individual student. On top of that, there is absolutely no evidence that the plaintiff ever advocated on behalf of her students that we were discriminating or violating the law or protested the discrimination. In this case, she had ample opportunity to do so. With these kids, there is always an annual IEP meeting in which their individualized education program is set out before the year. That decision of what the students should be taught, where they're placed, and all relative issues regarding their education is determined with the parents' input and by a consensus of the educational people. At that meeting, the plaintiff never objected to the placement of the students, the teaching methods that discipline should be handled, or disputed any of the goals, either social, emotional, or education. The plaintiff never encouraged any of the parents to file objections to the IEP, which she could have. And in fact, during this whole period of time, no parent ever objected or filed a complaint with respect to the education they're receiving, either under IDEA, 504, or ADA. And most importantly, plaintiff never raised any issues about her students with respect to her evaluations from 2006 to the present. And the prime example, which I think has just been pointed out, is in a rebuttal to her unsatisfactory evaluation. In that, she never raised any issue about the students weren't receiving the education they were required to under Section 504. In fact, besides the admissions that she made about our poor teaching, most of it was excuses about how she couldn't get up to that point. Because she did not aid her students with respect to the second question, because she did not, in a sense, aid her students with respect to Section 504, defendants obviously did not interfere with her rights. In fact, her experts testified that what we had proposed for her for improvement was appropriate and wasn't interfering, but was helping her in her teaching methods. The plaintiff, in a sense, argues, however, that the way she taught aided her students. And by giving her an unsatisfactory evaluation, that interfered with her ability to aid the students. The problem with this argument is that merely teaching is not considered aiding students. The Tenth Circuit ruled on that in Montaigne and is cited in their case. On top of that, basically what happened is it's undisputed that the evidence disclosed that the way she taught caused chaos in the classroom. Again, the evaluations from 2006 to 2012 showed constantly she was not able to manage her class. Her response to that is, that's just the way the kids are. But that's not an offense to an unsatisfactory evaluation, nor does that turn the evaluation into a violation of Section 504. In fact, there's no evidence that the way she taught prevented discrimination against her students. And in fact, there's no evidence on the record that after she left, the district went ahead and discriminated against these students in any way. And again, in fact, her own expert testified that defendant's evaluations were designed to improve her instruction, which she herself admits. Therefore, under Section 504 and the standards that are used in Section 504, she did not engage in a protective activity. The school district did not interfere with that protective activity. And clearly, whatever they did was not intended to discriminate. Therefore, the Section 504 claim should be dismissed. I just want to touch on the preclusion argument that's in our brief and plaintiff's argument that we waived it. The claim splitting. We were arguing that the state court decision constituted res judicata. When did you first make that argument in the district court? We made it earlier in order to get a stay of the proceedings while the case was going on. Could you be concrete? We made it in April of 2015, which was the time we filed a motion to dismiss, which was for, well, November, the state case became final. I'm lost. OK. The federal suit was filed when exactly? I think late August 28, 2012. August 2012. And you filed your motion based on preclusion when? In 2015. All right. And the panel in Lawler held that waiting 18 months after the federal case was filed was too late and abandoned any objection to claim splitting. So here, the defendant waited, it seems, twice as long. Why isn't Lawler dispositive? It's not because, well, one, I think it's wrong, but that's the argument there. It is the law of the circuit. 18 months is too long. And here, the defendant waited longer. Well, the state claim did not become final until November of 2014. So if we made the claim, the federal case. Look, that just sounds like disagreement with Lawler. You could have said the same thing there. Right? One panel doesn't just ignore another panel. We have a panel that says 18 months is too long. I think we take it as a given that 18 months is too long. You think you have reasons. Fine. 18 months is too long. All right. But we do have reasons, because the whole point of claim is two parallel cases going on at the same time. The difference is one becomes final. And that then allows one side to raise the fact that it's now raised judicata. We raised it, in a sense, the first opportunity we could. No, the first opportunity was the day the state lawsuit was filed. You go to the federal court and say, we would like you to stay your proceedings pending the resolution of the state case. It's actually perfectly common in parallel litigation for the litigants to ask one court to stay in preference to the other. Right? And you object at that time to claim splitting. But I gather that's not what happened. No, it was not. But I don't think there is a requirement to stay. Well, that's just disagreement with Lawler. Sorry about that. I know. But I think the way the claim splitting should work is that when it becomes raised, I can't raise race judicata until one of the cases becomes final. This case, the state case, didn't become final until November of 2014, in which case we raised it when our motion for summary judgment was due, which was April. It probably would have been earlier, but I think discovery was continued for a while. So our argument is we didn't acquiesce. And I understand the issue between Lawler and this case. If there's no further questions. All right. We have your position. Thank you, Mr. Eisenhower. Mr. Stevens? The only difference is Lawler was filed on August 16, 2012. Frakes, I filed the 28th of 2012. The state litigation was September 4, 2012. And it's in the appendix. It was July of 2015 when they did a joint motion in both cases based on claim splitting. As to the main point of why I'm here is that the federal law does put standards on that override state law. And at trial level, Judge Shannon talked about, well, I have to show an interference with the right to public education. Well, the Rehabilitation Act requires that these be accommodated. If you don't evaluate your teachers and are so off on what these students actually do, which is, as the expert said, it's chaotic, then how can they receive the education that's required? If there's a valuation that puts the teacher's job at risk, that's certainly interference. That's the plaintiff's claim. And there was a Fair Housing Administration case that Judge Shannon cited below that talks about that and what the standard is. Let's refer to questions. Thank you very much. All right. Thank you, Mr. Eagle. Thank you, Mr. Eisenhower. Case is taken under advisement. Court will proceed.